## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION


**ROODY SIMON,**

      **Petitioner,**

**vs.**                                   **Case Number 4:05cv472-RH/WCS**

**ALBERTO GONZALES,**
**et al.,**

      **Respondents.**

_____/


## REPORT AND RECOMMENDATION

The *pro se* Petitioner initiated this action brought pursuant to 28 U.S.C. § 2241 on December 12, 2005.  Doc. 1.  Respondents have filed an Answer, doc. 5, with numerous exhibits, and Petitioner has filed a Reply, doc. 6, and a supporting Declaration, doc. 7.

**Claim of the § 2241 petition**

Petitioner's claim does not challenge an order of removal; rather, Petitioner is only seeking release from custody pursuant to Zadvydas v. Davis, 533 U.S. 678 (2001). Doc. 1.  Petitioner alleged that his order of removal became final on May 9, 2005, and he has been held in custody since April 20, 2005, awaiting removal.  *Id.*  The § 2241

petition asserts that because he has been held beyond the presumptively reasonable six month period for effecting removal, and because his native country of Haiti refuses to issue travel documents for him, Petitioner avers that Respondents will be "unable to deport him in the reasonably foreseeable future."  *Id.*

**The Answer**

The time and manner of Petitioner's entrance into the United States is unknown.[1] Doc. 5, p. 2.  However, on August 5, 2004, Petitioner was convicted of armed robbery. The basis for his removal is, thus, two-fold: being present in this country without being admitted (§ 212(a)(6)(A)(i) of the Immigration and Nationality Act {"INA"}), and for having committed a crime of moral turpitude (§ 212(a)(2)(A)(i)(I) of the INA).  *Id.*; *see also* 8 U.S.C. § 1227(a)(1)(B), § 1227(a)(2)(A)(i).  Respondents agree that the order of removal was entered on May 9, 2005, and became final by virtue of the fact that Petitioner did not appeal the order.  *Id.*, at 3, 5; *see also* doc. 5, ex. 4.  Respondents have not disputed Petitioner's claim that he has been held in custody since April 20, 2005.  *See* doc. 1.  Moreover, the record adequately demonstrates that Petitioner is an inadmissible alien who has never sought to adjust his status to that of a lawful permanent resident.  *See* doc. 5, ex. 1, p. 2.

---

[1] Petitioner stated in his petition that he has "resided in the United States since his entry in March 13, 1990, and has lived in Florida" since that time.  Doc. 1, p. 3.  He states that he was born in Haiti on January 20, 1986, and, thus, he has been in this country since he was four years of age.  *Id.*, at 4.  He further states that he and his mother escaped from Haiti due to a threat on their lives and he arrived in the United States "on a plane with [his] family under a temporary work permit."  *Id.*

After being taken into custody, a decision to continue Petitioner's detention was rendered on July 28, 2005.  Doc. 5, p. 3; ex. 5.  A subsequent decision to retain Petitioner in detention was made on January 17, 2006.  Doc. 5, p. 3; ex. 6.  That decision stated that Petitioner's "repatriation to Haiti [was] expected to occur in the reasonably foreseeable future."  Exhibit 6.

Respondents have submitted evidence that travel documents have been requested from the Haitian consulate on three occasions:  May 11, 2005, August 26, 2005, and on January 8, 2006.  Doc. 5, p. 3; ex. 7.  The first request (May 11th) was a letter to the Consulate of Haiti requesting "issuance of an emergency travel document" and indicating that information was enclosed with the letter to assist "in making a determination as to" Petitioner's citizenship.  Exhibit 7, p. 1.  The second request, made some three months later, again sought "issuance of an emergency travel document on behalf of [Petitioner] who is a native and citizen of Haiti.  Exhibit 7, p. 2.  The letter stated that attached were "supporting documents which should help tp expedite the issuance of a travel document."  *Id.*[2]  The third request was in the form of a facsimile transmission on January 6, 2006,[3] which simply requested "an update of the status" of six individuals, one of whom was Petitioner Roody Simon.  Doc. 5, ex. 7, p. 3.  The Answer was filed on March 16, 2006, and no supplemental evidence has been presented showing whether additional efforts have been made since January, 2006.

---

[2] It is unknown what documents were attached as they have not been provided.

[3] The typed date on the facsimile states "January 6, 2005" but it is presumed that is a typographical error and the actual date was in January of 2006.  Doc. 5, ex. 7, p. 3.

Respondents assert Petitioner's continued detention is lawful because "it is reasonably foreseeable that he will be removed from the United States."  Doc. 5, p. 5.  It is argued that Petitioner "has not shown that his removal is not likely to occur in the reasonably foreseeable future."  *Id.*, at 6.  Respondents further contend that "Petitioner has an obligation to assist in his removal" and that he has not provided "evidence of his efforts to communicate with the Consulate of Haiti."  *Id.*, at 7.  Respondents additionally state that the Department of Homeland Security "is awaiting clearance from the Haitian Embassy for the return of the [Petitioner] to Haiti."  *Id.*

In response, Petitioner has argued that Respondents fail "to submit even a single item of record evidence that demonstrates that [he] has failed to cooperate to effectuate his removal."  Doc. 6, p. 2.  Petitioner suggests that by failing to show that he has not provided necessary information to help effect his removal, "Respondents vague allegations of 'failure to cooperate' are specious."  *Id.*, at 7.  Additionally, Petitioner notes that Respondents have failed to provide any evidence showing that Petitioner's "removal is likely to occur in the near future."  *Id.,* at 3.  In particular, Petitioner suggests that Respondents are unable to demonstrate that other detainees in Petitioner's situation (presumably Haitian nationals) have been removed recently.  *Id.*, at 4.  Petitioner states that he is detained in the same detention facility with other "Haitians who are in his similar situation . . . who have also failed to be removed by" Respondents.  *Id.*  Indeed, Petitioner states that there are many other Haitians being detained with him who have been waiting months without being deported.  Doc. 7, p. 2.  Petitioner intimates that the Department of Homeland Security is keeping them detained

until they file habeas petitions and then they will be released.  *Id.*, at 2-3.  Petitioner

contends that Haiti will not accept people back to that country who have criminal

convictions.  Doc. 7, p. 3.  Petitioner points to the fact that Respondents have made

three requests for travel documents which have apparently gone without a response to

support his claim that Respondents simply "have no information as to when" Petitioner

will be removed.  Doc. 6, p. 4.

Petitioner states that he has already provided ICE with a copy of his "Haitian birth

certificate, copies of letters that he sent to the consulate, the names and addresses of

family members in Port au Prince, Haiti."  Doc. 6, p. 7.  Petitioner notes that because he

"left Haiti at the age of four," he does not have a passport or Haitian identity card.  *Id.*

Nevertheless, Petitioner has written the consulate twice in an effort to obtain his travel

documents.  *Id.*, at 7-8.  Petitioner states he "received no answer from the consulate."

*Id.*, at 8.  Petitioner also attempted to make numerous telephone calls to the consulate.

*Id.*  Those efforts were not particularly productive either as he was able to speak with

anyone on only one occasion .  *Id.*  However, at that time, Plaintiff spoke with Mrs.

Remie from the Miami consulate office who advised Petitioner that they had everything

they "needed to issue a travel document but that the situation in Haiti was very bad right

now and that she could not say when or if the Haitian government would issue a travel

document for [him.]"  Doc. 7, p. 2.[4]  Petitioner's mother also made numerous attempts to

seek assistance from the Haitian consulate, to no avail.  *Id.*

---

[4] To support his Reply to the Answer, Plaintiff has presented his affidavit in which he testifies as to his efforts to assist in his removal.  Doc. 7.

**Analysis**

Respondents have raised the issue of jurisdiction.  Doc. 5, p. 4.  Respondents are correct that this court does not have jurisdiction "to review petitioner's removal order."  However, the substance of the removal order is not challenged in this action. Petitioner clearly states he is only challenging an indefinite period of detention. Jurisdiction over this case is proper under 28 U.S.C. § 2241.  This general habeas corpus statute grants federal courts the authority to issue a writ of habeas corpus to a person held "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2241(c)(3).  The statute also grants federal courts jurisdiction to review the lawfulness and constitutionality of executive detention.  As noted within <u>Zadvydas</u>, "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."  <u>Zadvydas v. Davis</u>, 533 U.S. 678, 688, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001).  Therefore, this Court has subject matter jurisdiction to entertain Petitioner's challenging to continued detention following the order of removal.

Section 1231(a)(1)(A) provides that the government has a 90-day "removal period" to remove an alien ordered removed from the United States.  8 U.S.C. § 1231(a)(1)(A).  However, the removal period "shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal."  8 U.S.C. § 1231(a)(1)(C).  During the "removal period"

an alien must be detained. 8 U.S.C. § 1231(a)(2).  After the removal period, the government may detain the alien or release him subject to conditions of release.  8 U.S.C. § 1231(a)(6).

In Zadvydas v. Davis, 533 U.S. 678, 689, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), the United States Supreme Court considered a challenge to 8 U.S.C. § 1231(a)(6) and was asked to decide whether the statute authorized indefinite detention of a removable alien.  The Court held that the continued detention of a legal permanent alien beyond the mandated 90-day removal period was permissible under the Constitution, but only for as long as was "reasonably necessary to bring about that alien's removal from the United States."  Id., at 689, 121 S. Ct. at 2498.  The Court interpreted the statute to avoid constitutional threat by concluding that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."  Id., at 699, 121 S.Ct. at 2503.  For the sake of uniform administration by the federal courts, the Zadvydas Court held that "the presumptive period during which the detention of an alien is reasonably necessary to effectuate his removal is six months; after that, the alien is eligible for conditional release if he can demonstrate that there is 'no significant likelihood of removal in the reasonably foreseeable future.' "  Clark v. Martinez, 543 U.S. 371, 125 S.Ct. 716, 722, 160 L.Ed.2d 734 (2005), quoting Zadvydas, 533 U.S. at 701, 121 S.Ct. at 2505.

In Clark v. Martinez, *supra*, the Court extended its interpretation of 8 U.S.C. §
1231(a)(6) to inadmissible aliens.[5]  The Court concluded that there was no reason why
the period of time reasonably necessary to effect removal would be longer for an
inadmissible alien than for an admissible alien.  Clark, 543 U.S. at 386, 125 S.Ct. at
727.  Thus, it held that the 6-month presumptive detention period prescribed in
Zadvydas should be applicable.  *Id.*  The combination of opinions from Clark and
Zadvydas controls this case: an alien cannot be detained indefinitely and when an alien
shows that he has been held more than six months beyond the removal period and his
removal is not reasonably foreseeable, a § 2241 petition should be granted.  Clark, 543
U.S. at 386-387, 125 S.Ct. at 727; Benitez v. Wallis, 402 F.3d 1133, 1135 (11th Cir.
2005) (relying on Clark to hold that "an inadmissible alien can no longer be detained
beyond the statutory 90-day removal period of § 1231(a)(1), where there was no
significant likelihood of removal in the reasonable foreseeable future.").

Zadvydas established a burden-shifting analysis to review these claims.  After
the presumptive six month removal period has expired, an alien must provide "good
reason to believe that there is no significant likelihood of removal in the reasonably
foreseeable future."  Zadvydas, 533 U.S. at 701, 121 S.Ct. at 2505.  Thereafter, "the

---

[5] The relevant statute provides: "An alien ordered removed who is inadmissible
under section 1182 of this title, removable [for violations of nonimmigrant status or entry
conditions, violations of criminal laws, or threatening national security] or who has been
determined by the Attorney General to be a risk to the community or unlikely to comply
with the order of removal, may be detained beyond the removal period and, if released,
shall be subject to the terms of supervision in paragraph (3)."  8 U.S.C. § 1231(a)(6),
*quoted in* Benitez v. Wallis, 402 F.3d 1133, 1134 (11th Cir. 2005).

Government must respond with evidence sufficient to rebut that showing."  *Id.*  The

Court also noted:

> And for detention to remain reasonable, as the period of prior postremoval
> confinement grows, what counts as the "reasonably foreseeable future"
> conversely would have to shrink. This 6-month presumption, of course,
> does not mean that every alien not removed must be released after six
> months.  To the contrary, an alien may be held in confinement until it has
> been determined that there is no significant likelihood of removal in the
> reasonably foreseeable future.

*Id.*, at 701, 121 S.Ct. at 2505.

Petitioner has made a *prima facie* showing that he has been held for more than

six months following a final order of removal and that there is no significant likelihood of

his removal within the reasonably foreseeable future.  The allegations in the § 2241

petition adequately make this showing by setting forth that Petitioner has been held

longer than six months and that he has received no responses to his requests for travel

documents from the Haitian government despite a number of attempts to communicate

with that government over a period of months.  Thus, the burden is on the Government

to show that Petitioner's removal is foreseeable and can be carried out within a

reasonable period of time.

Respondents make boiler-plate assertion that Petitioner has not made

"meaningful efforts to assist in his removal, that is, his failure to apply to the Consulate

of Haiti for travel documents renders disingenuous his claim that there is no likelihood of

removal."  Doc. 5, p. 7.  Yet, as pointed out by Petitioner, Respondents have not

"submitted to the court a single letter to [Petitioner] warning him of failure to comply" or

failure to provide necessary documents or information.  Doc. 6, p. 7.  The Department of

Homeland Security "has a form letter which is regularly issued to detainees."  *Id.*

Petitioner points out that Respondents have not identified "a single document or piece

of information that it lacks in order to obtain a travel document for [Petitioner]."  *Id.*  The

Government's assertion is unsupported.

Judicial notice is taken that in case number 4:06cv37 in this court, another §

2241 case seeking release from continued detention under Zadvydas, Respondents

asserted that the Petitioner there had not made reasonable efforts to assist in his

removal.  There, however, evidence was presented that requests were given to the

Petitioner directing him to provide certain documents, including a passport, so that he

could be removed.  Doc. 18, ex. J of case 4:06cv37.  Indeed, an instruction sheet was

provided to the detainee "regarding requirement to assist in removal."  *Id.*  The

instruction sheet is essentially a form containing a list of documents and has places for

checkmarks to show the detainee what is lacking and what specific documents he must

obtain.  *Id.*, at 5.

No evidence has been presented to in this case to show that Petitioner has ever

received such an instruction sheet.  The absence of this information is particularly

noteworthy since Respondents have failed to name one document or piece of

information that Petitioner has not provided upon their request.  Also, prior to the final

order of removal being issued on May 9, 2005, officials with ICE *already* had Petitioner's

birth certificate for review.  *See* doc. 5, ex. 1, p. 2.  The record of deportable or

inadmissible alien shows Petitioner's birth certificate was available for review as early as

March 15, 2005.  Doc. 5, ex. 1, p. 2.  There is simply no evidence suggesting that Petitioner has not made reasonable efforts to assist in his removal.

Finally, as to the assertion that the Department of Homeland Security is "awaiting clearance from the Haitian Embassy" so that Petitioner can be returned, Respondents have not come forward with any statement of facts showing any basis for this assertion, showing a purported time for his removal, or that the Government has had *any* response from the Haitian consulate.  Indeed, the evidence is that three requests have been made to the Consulate of Haiti, and there is no evidence of any response.[6]  The lack of any response suggests, to the contrary, that Petitioner's removal may not be reasonably anticipated in the near future.

In a notice dated July 28, 2005, Petitioner was advised that his detention would be continued and that his travel documents were "foreseeable."  Doc. 5, exhibit 5.  Another notice dated January 17, 2006, stated that his "repatriation to Haiti [was] expected to occur in the reasonably foreseeable future".  Doc. 5, exhibit 6.  It has now been six months beyond the last notice of continued detention and Petitioner is still in custody.[7]  As Petitioner's period of post-removal is now over one year, one month, and one week, (measured from the date of the order of final removal, May 9, 2005),[8] the

---

[6] Requests are dated May 11, 2005; August 26, 2005; and January 6, 2006.  Doc. 5, ex. 7.

[7] Petitioner has filed a notice on June 16, 2006, stating he is detained in the Wakulla County Jail.  Doc. 9.

[8] The beginning of the removal period is defined by statute:

"The removal period begins on the latest of the following:  (i) The date the order

"reasonably foreseeable future" must shrink.  It is either time for the Government to affirmatively come forward with *some evidence* that Petitioner's removal *now* is relatively imminent or it is time to release Petitioner.

Where removal is not significantly foreseeable, then continued detention is unreasonable, is not authorized by statute, and is not constitutionally permissible.  *See* Zadvydas, 533 U.S. at 690 and 699-700, 121 S.Ct. at 2499 and 2504.  The relevant statute provides that if an alien "is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General."  8 U.S.C. § 1231(a)(3).  Such regulations are to require the alien to: "(A) to appear before an immigration officer periodically for identification; (B) to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government; (C) to give information under oath about the alien's nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate; and (D) to obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien."  8 U.S.C. § 1231(a)(3).  Inadmissible or criminal aliens must be subject to terms of supervision.  8 U.S.C. § 1231(a)(6).

---

of removal becomes administratively final.  (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.  (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231 (a)(1)(B).

Accordingly, because the Government has not shown that Petitioner will be removed in the reasonably foreseeable future, and because his continued detention is no longer authorized by statute nor permitted by due process, the petition should be granted.  Respondents should release Petitioner from custody under such terms and conditions deemed necessary to ensure Respondents are kept apprized of Petitioner's whereabouts pending his removal and in compliance with the requirements of § 1231(a)(3).

In light of the foregoing, it is respectfully **RECOMMENDED** that Petitioner Roody Simon's petition for a writ of habeas corpus, doc. 1, filed pursuant to 28 U.S.C. § 2241 be **GRANTED** and the court **ORDER** that if Petitioner is not removed to Haiti within 30 days from entry of the order on the docket, he be released to supervision.

**IN CHAMBERS** at Tallahassee, Florida, on June 22, 2006.


 s/      William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**



**NOTICE TO THE PARTIES**

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.